## IN RE BRAEMER.

### PATENTS; NOVELTY; ANTICIPATION.

An invention of a method for so treating air by means of circulating it through a fluid spray as to chill and reduce the humidity of the air is anticipated by a patent for a similar invention, where the difference between the method of the patentee and that of the applicant is entirely a question of the temperature of the spray relatively to that of the air brought through it, although the patentee applies his invention under conditions which normally require the heating of the air and adding to its humidity.

No. 930. Patent Appeals. Submitted January 11, 1915. Decided February 1, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for a patent. *Affirmed.*

The facts are stated in the opinion.

*Mr. Robert M. Barr* for the appellant.

*Mr. Robert F. Whitehead* for the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an appeal by G. R. Braemer from a decision of the Commissioner refusing a patent containing the following claims:

"1. The herein-described method of treating air, which consists in circulating the air through a fluid spray having a temperature lower than the normal temperature of the atmosphere, recirculating the cooling fluid, and varying the temperature of the cooling fluid under the control of the condition of the air after being treated to and removed from the influence of the said fluid.

"2. The herein-described method of treating air, which consists in circulating the air through a fluid spray having a temperature lower than the normal temperature of the atmosphere, removing the air out of the influence of the fluid spray and precipitating the excess of moisture from the air, recirculating the cooling fluid, and causing it to act upon fresh bodies of air, and varying the temperature of the cooling fluid under the control of the condition of the air after being treated to and removed from the influence of the said fluid, whereby its humidity may be maintained substantially constant.

"3. The herein-described method of lowering the temperature of air supplied to a building or compartment therein, consisting in passing a current of air through a body of cooling fluid maintained at a temperature below the normal temperature of the atmosphere, recirculating the cooling fluid to a minimum temperature, and varying the temperature of the cooling fluid above its minimum temperature under the control of the condition of the treated air after being subjected to the action of and removed out of the influence of the cooling fluid.

"4. The herein-described method of lowering the temperature of air supplied to a building or compartment therein, consisting in passing a current of air through a spray of cooling fluid maintained at a temperature below the normal temperature of the atmosphere, recirculating the cooling fluid in contact with

fresh bodies of air, cooling the said recirculated fluid to a minimum temperature and varying the temperature of the spray of cooling fluid above its minimum temperature by causing a portion of the fluid before being sprayed to be maintained in circulation out of the influence of the means for imparting its minimum temperature, under the control of the condition of the air after it has been treated to the cooling fluid and removed from its influence."

The rejection was based on reference to the following patents: Sedlacek, 601,716, April 5, 1898; Vollmann, 741,855, October 20, 1903; Cattaneo et al., 839,362, December 25, 1906; Carrier, 854,270, May 21, 1907.

By the method set out in the claims, air is drawn through a spray of cold brine, which chills the air normally to the dew point. The air thus denuded of a part of its moisture is delivered into the rooms of a building, being warmed up again before delivering it to the rooms, or not, as desired. The suggested use is chiefly for summer, whereby dry air of suitable temperature is delivered throughout the building.

The patent to Carrier discloses an apparatus intended for use, primarily, in winter time, in ventilating factories, particularly woolen mills, and maintaining the temperature and humidity within prescribed limits. He passes the air through a spray maintained at a desired predetermined temperature, and, after the air has passed the spray, it is delivered into the rooms through a heater.

Before the final hearing by the Commissioner, affidavits were filed by Braemer and by his attorney, both experts in the art. It is stated in these affidavits that there is no possible way in which the Carrier process can be worked to lower the temperature of the air being treated below the normal temperature of the atmosphere, nor to reduce the humidity below the normal humidity of the air; and that under no conditions can the applicant's apparatus produce the process described in the Carrier patent. These two processes are stated to be diametrically opposite.

Considering these affidavits, it was said by the Commission-

er: "It will be observed, however, that this is entirely a question of the temperature of the spray relatively to that of the air brought through it. If, for example, in Carrier's process the spray were at 63 degrees temperature, and the air outside of the building were at a higher temperature, Carrier's process would be effective to lower the temperature of the air provided the heater were shut down, which proviso applies equally to applicant's process.

"If, also, at the same time the air outside were saturated, as, for example, during rain, the chilling of the air in the spray of the Carrier process would partly denude it of moisture, and, on being heated at the heater after passing the spray, it would be drier air than the air outside.

"Carrier describes the identical process of the applicant. He applies it under conditions which normally require heating the air and adding to its humidity, but this does not leave it open to the applicant to obtain a patent for the use of Carrier's process, to chill and reduce the humidity of the air, by merely changing the temperature of the spray."

In this conclusion we agree v ith the Commissioner. The decision is affirmed, and the clerk will certify this decision to the Commissioner of Patents as required by law. *Affirmed.*